### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| MELISSA BOHANNAN, **individually, and on behalf of a similarly situated class,** *et al.*,    ) ) ) ) | |
|     **Plaintiffs,**    ) | **CIVIL ACTION NO.: 1:16-cv-00272-WKW-WC** |
|    ) | |
| **vs.**    ) | **CLASS ACTION** |
|    ) | |
| **INNOVAK INTERNATIONAL, INC.,**    ) ) ) | |
|     **Defendant.**    ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Melissa Bohannan, Cherisa Hall, Jennifer Matheny, Tiffany McCoy, Ashley McGhee, Sherrie Salem, Summer Lisenby, Jolie Harper, and Crystal Shelley (collectively referred to herein as the "Named Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Class Certification (referred to herein as the "Motion") pursuant to Federal Rule of Civil Procedure 23 (referred to herein as "Rule 23"). As set forth below, the Motion is due to be granted.

## I.   <u>INTRODUCTION</u>

Named Plaintiffs commenced this action against Innovak International, Inc. (referred to herein as "Innovak") after becoming aware that the Named Plaintiffs'

personal private information (referred to herein as "PPI") being stored, maintained, and/or controlled by Innovak on a web-portal had been accessed by third-party actors during a data breach.  The basis of this action is that Innovak—a sophisticated information technology and software company—had a duty to implement reasonable security measures to protect and safeguard Named Plaintiffs' PPI, and Innovak failed to do so, which resulted in third-parties obtaining Named Plaintiffs' PPI. Innovak also failed to notify Named Plaintiffs of the data breach, so that Named Plaintiffs could take action to protect themselves. Each Named Plaintiff either received a letter from the Internal Revenue Service ("IRS") or their employer notifying them that their PPI had been compromised.[1]   In filing the Amended Complaint, Named Plaintiffs properly pled the elements of a class action under Federal Rule of Civil Procedure 23.  Named Plaintiffs now submit this Memorandum in support of their Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23.

## II.   FACTUAL AND EVIDENTIARY BACKGROUND

### A.   Background of Innovak and Their Web-Portal Product

Innovak is a company that creates, maintains, and supports administrative software that it sells predominantly to school districts. 30(b)(6) Corporate Deposition Testimony of David Watson of Innovak, page 25, in Exhibit A, (referred to herein as "Innovak Watson Depo").  Innovak currently contracts with

---

[1] Declarations of the Named Plaintiffs are attached as Exhibits C-K to the Evidentiary Submission in Support of the Motion for Class Certification.

approximately forty (40) school districts to maintain and support the software Innovak created and sold to them. *Id*. at 30. Until the early 2000s, Innovak did not offer any web-based products or features—their products were simply installed on the school district servers and all data was inaccessible outside of those school district networks. *Id*. at 92-93. However, at the request of a client, Warren County School District in Mississippi, Innovak created a "web-portal" that allowed employees to log in to a website on the internet with a user ID and password, which would then allow the employee to access their individual payroll information (including pay stubs, W-2s, and/or direct deposit information). *Id*. at 97-98. This first web-based portal could be accessed from any computer connected to the internet through a domain name that was registered and maintained by the school district that requested the portal be built. *Id*. Innovak charged Warren County $5,000 to create this web-portal and $50/month for maintenance and support. *Id*. at 94-95.

A number of Innovak's other school-district clients noticed the new web-portal product and requested that their current Innovak software be upgraded to include the web-portal access feature. *Id*.at 96-97. Fifteen (15) school districts ultimately purchased the web-based portal product from Innovak for $5,000 each; three (3) of those school districts are in Alabama, and twelve (12) school districts are in Mississippi. *Id*. *at* 127. Instead of having each school district register and maintain its own website and domain name (as the Warren County School District

did), Innovak itself registered a single domain name for all of these school districts to use, namely Innovak.net. *Id.* at 79-80; 97-98. *See* the Internet Corporation for Assigned Names and Numbers (referred to herein as "ICANN) in Exhibit B.[2] Accordingly, all fifteen (15) of these school districts' employees were capable of logging in to Innovak.net to access and download their payroll information. Innovak maintained all control and responsibility for its web-portal.

### B.     Facts of the Innovak Data Breach

In the spring of 2016, numerous school teachers and other school employees of Dothan City School District, Alexander City School District, and Escambia County School District in Alabama attempted to file their income tax returns for the year 2015 with the IRS. *See* Melissa Bohannon declaration in Exhibit C; Cherisa Hall in Exhibit D; Jennifer Matheny declaration in Exhibit E; Tiffany McCoy declaration in Exhibit F; Ashley McGhee declaration in Exhibit G; Sherrie Salem declaration in Exhibit H; Summer Lisenby declaration in Exhibit I; Jolie Harper declaration in Exhibit J; and Crystal Shelley declaration in Exhibit K. Some of those school district employees subsequently received correspondence from the IRS notifying them that tax returns for that year had already been filed on their behalf.[3] The affected employees then notified their employers, who in turn notified David

---

[2] Innovak admitted that the ICANN documents are accurate. Innovak Watson Depo at 79-81 in Exhibit A.

[3] Please see the letters the IRS sent to the Named Plaintiffs, which have been redacted in compliance with this Honorable Court's Local Rules and are included in the Evidentiary Submission in Support of Plaintiffs Motion for Class Certification identified as Exhibit C, D, E, F, G, H, J, and K.

Watson, the general manager of Innovak, on March 28, 2016. Innovak Watson Depo at p. 54, in Exhibit A.

Watson, who maintains that he and Innovak had no role or responsibility in the cybersecurity of the data at issue, Innovak Watson Depo at p. 123, in Exhibit A, responded himself by checking the school districts' servers for abnormal activity, which he could do remotely from his office. *Id*. at 56-57. Watson immediately noticed that there was a single Internet Protocol (hereinafter "IP") address (signaling a single person or entity) that had been accessing and downloading the W-2s of numerous employees from multiple school districts, which was a "red flag." *Id*. at 56. Watson testified that he did a "Google search" and determined that the requests were coming from Nigeria, which was a "secondary level of red flag." *Id*. Watson then personally shut down all access to the web-portal, Innovak.net, to prevent any further unauthorized access. *Id*. at 57, 121.

Watson's conclusions generally track the investigatory findings of law enforcement, who issued a federal indictment in March 2017 for a Nigerian citizen.[4] The indictment alleges that Kevin Kunlay Williams ("Williams") is a Nigerian citizen that was part of a fraudulent scheme that "did access without authorization the payroll information of employees of various public school systems from a payroll

---

[4] *Please see a copy of the indictment in the matter of United States of America v. Kevin Kunlay Williams a/k/a/ Kunlay Sodipo, Case No. SI 4:17 CR 00065-RWS (SPM) in the United States District Court for the Eastern District of Missouri, Eastern Division, included as Exhibit L in the Evidentiary Submission in Support of Plaintiffs Motion for Class Certification.*

company."[5] Although it contests being labeled as a "payroll company," Innovak conceded that it is the "payroll company" being referenced in the indictment and the accompanying Department of Justice press release.[6]  30(b)(6) Corporate Deposition Testimony of Robert Remington of Innovak, page 35, in Exhibit M, (referred to herein as "Innovak Remington Depo"). The indictment goes on further to specify that Williams and others used the payroll information "to prepare and electronically file false income tax returns with the IRS."[7] Details of how this fraudulent scheme occurred will be obtained through further discovery, but it is undisputed at this time that Williams and/or other criminals accessed school district employees' payroll information through Innovak.net and that the web-portal, Innovak.net, is registered to and under the control of Defendant Innovak.[8]

## C. Each Named Plaintiff Applying to be a Class Representative Suffered Injuries Traceable to the Innovak Data Breach[9]

### 1. Melissa Bohannan

Plaintiff Bohannon has been an employee at Dothan City Schools since August of 2006. *See* Bohannon declaration in Exhibit C. Prior to May 2016,

---

[5] *Id.*
[6] The DOJ article has been attached to the Evidentiary Submission in Support of Plaintiffs Motion for Class Certification as Exhibit N.
[7] *Please see a copy of the indictment in the matter of United States of America v. Kevin Kunlay Williams a/k/a/ Kunlay Sodipo*, Case No. SI 4:17 CR 00065-RWS (SPM) in the United States District Court for the Eastern District of Missouri, Eastern Division, in Exhibit L.
[8] *See* ICANN documents in Exhibit B.
[9] Previously named plaintiff Mary Ellen Prophet recently decided to withdraw her candidacy to be approved as Class Representative of this action. Thus, her factual allegations are omitted. Plaintiffs will move to amend the Complaint or have Plaintiff Prophet dismissed pursuant to the Federal Rules of Civil Procedure as soon as practicable.

Bohannon used Innovak.net to access her payroll and W-2 information. *Id*. Bohannon was notified by the IRS on March 31, 2016 that a tax return had already been filed on her behalf for the year 2015. *Id*. Bohannon subsequently purchased LifeLock credit monitoring service to protect herself from further harm after she learned that her identity had been stolen. *Id*. Bohannon has had to spend time, effort, and money to resolve these issues caused by this identity theft. *Id*.

### 2.  Cherisa Hall

Plaintiff Hall has been an employee at Dothan City Schools since August of 2000. *S*ee Hall declaration in Exhibit D.  Hall filed her tax return for the year 2015 and was subsequently notified by the IRS on May 28, 2016 that a tax return had already been filed on her behalf for that year. *Id*.  As a result of the breach, Plaintiff Hall's PPI was utilized to establish fraudulent accounts in her name, including a Discover credit card account. *Id*. Hall had to take action to close the Discover account and notify the credit reporting agencies of this fraud. *Id*. Hall signed up for Experian, TransUnion, and Equifax credit monitoring services to protect herself from further harm after learning that her identity had been stolen. *Id*. Hall had to spend time, effort, and money to resolve these issues caused by this identity theft. *Id*.

### 3.  Jennifer Matheny

Plaintiff Matheny was an employee at Dothan City Schools from September 1995 to May 2016. *See* Matheny declaration in Exhibit E. Prior to May 2016, Matheny used Innovak.net to access her payroll and W-2 information. *Id.* Matheny filed her tax return for the year 2015 and was subsequently notified by the IRS on March 28, 2016 that a tax return had already been filed on her behalf for that year. *Id.* As a result of the breach, Plaintiff Matheny's PPI was utilized to establish fraudulent accounts in her name, including a Discover credit account. *Id.* Matheny had to take action to close the Discover account and notify the credit reporting agencies of this fraud. *Id.* As a result of this fraudulent activity, her credit score dropped fifty (50) points. *Id.* Matheny signed up for Experian, TransUnion, and Equifax and was provided with seven years of credit monitoring services to protect herself from further harm after learning that her identity had been stolen. *Id.* Matheny had to spend time, effort, and money to resolve these issues caused by this identity theft.

### 4.  Tiffany McCoy

Plaintiff McCoy has been an employee at Dothan City Schools since January of 2002. *See* McCoy declaration in Exhibit F. Prior to May of 2016, McCoy used Innovak.net to access her payroll and W-2 information. *Id.* McCoy was notified by the IRS on March 18, 2016 that a tax return had already been filed on her behalf for the year 2015.  As a result of the breach, Plaintiff McCoy's PPI was utilized to

establish fraudulent accounts in her name, including a Discover credit card. McCoy had to take action to close the Discover account and notify the credit reporting agencies of this fraud. *See* McCoy declaration in Exhibit F. McCoy purchased LifeLock credit monitoring service to protect herself from further harm after she learned that her identity had been stolen. *Id*. She is currently signed up for Credit Karma and continues to monitor her credit weekly. *Id*. McCoy has had to spend time, effort, and money to resolve these issues caused by this identity theft. *Id*.

### 5. Ashley McGhee

Plaintiff McGhee has been employed by Dothan City Schools since August of 1999. *See* McGhee declaration in Exhibit G.  Prior to May 2016, McGhee used Innovak.net to access her payroll information and W-2 information. *Id*. McGhee was notified by the IRS on March 11, 2016 that a tax return had already been filed on her behalf for the year 2015. *Id*. As a result of the breach, Plaintiff McGhee's PPI was utilized to establish fraudulent accounts in her name, including a Discover credit card. *Id*. McGhee had to take action to close the Discover account and notify the credit reporting agencies of this fraud. *Id*. McGhee signed up for Credit Karma to protect herself from further harm after she learned that her identity had been stolen, and she continues to monitor her credit closely. *Id*. McGhee has had to spend time, effort, and money to resolve these issues caused by this identity theft. *Id*.

### 6. Sherrie Salem

9

Plaintiff Salem has been an employee at Dothan City Schools since August of 2004. *See* Salem declaration in Exhibit H. Prior to May of 2016, Salem used Innovak.net to access her payroll and W-2 information. *Id*. Salem was notified by the IRS on March 11, 2016 that a tax return had already been filed on her behalf for the year 2015.[10] As a result of the breach, Plaintiff Salem's PPI was utilized to establish fraudulent accounts in her name, including a Discover credit card. *See* Salem declaration in Exhibit H. Salem had to take action to close the Discover account and notify the credit reporting agencies of this fraud. *Id*. Salem signed up for a credit monitoring service through Experian to protect herself from further harm after she learned that her identity had been stolen, and she continues to monitor her credit closely. *Id*. Salem has had to spend time, effort, and money to resolve these issues caused by this identity theft. *Id*.

### 7.  Summer Lisenby

Plaintiff Lisenby has been an employee at Dothan City Schools since August of 2003. *See* Lisenby declaration in Exhibit I. Prior to April of 2016, Lisenby used Innovak.net to access her payroll and W-2 information. *Id*. On April 12, 2016, Lisenby received a letter from the Dothan City School District informing her that her personal information may have been compromised from Innovak.net. *Id*. As a result of the breach, Plaintiff Lisenby's PPI was utilized to establish fraudulent

---

[10] Please see Plaintiff Salem's redacted IRS letter in Exhibit O.

accounts in her name, including a Discover credit card. *Id*. Lisenby had to take action to close the Discover account and notify the credit reporting agencies of this fraud. *Id*. She signed up for Credit Karma to protect herself from further harm after she learned that her identity had been stolen, and she continues to monitor her credit. *Id*. Lisenby has had to spend time, effort, and money to resolve these issues caused by this identity theft. *Id*.

### 8.  Jolie Harper

Plaintiff Harper has been an employee at Dothan City Schools since August of 1999. *See* Harper declaration in Exhibit J. Prior to May 2016, Harper used Innovak.net to access her payroll information and W-2 information. *Id*. Harper was notified by the IRS on April 12, 2016 that a tax return had already been filed on her behalf for the year 2015.[11]  Harper has had to spend time, effort, and money to resolve these issues caused by this identity theft. *See* Harper declaration in Exhibit J.

### 9.  Crystal Shelley

Plaintiff Shelley has been an employee at Dothan City Schools since June of 2003. *See* Shelley declaration in Exhibit K. Prior to May 2016, Shelley used the Innovak web-portal to access her payroll and W-2 information. *Id*. Shelley was notified by the IRS on March 18, 2016 that a tax return had already been filed on her

---

[11] Please see Plaintiff Harper's redacted IRS letter in Exhibit P.

behalf for year 2015.[12] Shelley signed up for LifeLock credit monitoring services to protect herself from further harm after learning that her identity had been stolen. *See* Shelley declaration in Exhibit K. Shelley had to spend time, effort, and money to resolve these issues caused by this identity theft.

## III.  THE PROPOSED CLASS DEFINITION

The proposed class that Named Plaintiffs seek to represent is defined as:

All persons whose PPI was compromised as a direct and proximate result of the Innovak Data Breach. Excluded from the Class are the (i) owners, officers, directors, employees, agents, and/or representatives of Innovak and its parent entities, subsidiaries, affiliates, successors, and/or assigns, and (ii) the Court, Court personnel, and members of their immediate families.
("Nationwide Class")

Alternatively, Named Plaintiffs propose the following subclasses based on an individual's state of employment at the time of the Innovak Data Breach[13]:

All persons in Alabama whose PPI was compromised as a direct and proximate result of the Innovak Data Breach ("Alabama Class"); and,
All persons in Mississippi whose PPI was compromised as a direct and proximate result of the Innovak Data Breach ("Mississippi Class"). Excluded from these Subclasses are the (i) owners, officers, directors, employees, agents, and/or representatives of Innovak and its parent entities, subsidiaries, affiliates, successors, and/or assigns, and (ii) the Court, Court personnel, and members of their immediate families.

---

[12] Please see Plaintiff Shelley's redacted IRS letter in Exhibit Q.
[13] At this time, Named Plaintiffs believe that the Innovak Data Breach only affected school districts located in the states of Alabama and Mississippi. Named Plaintiffs will move for certification of additional state subclasses, if necessary, should they discover evidence that school districts in other states were also affected.

As shown herein, all pertinent information regarding the proposed class, including each member's identity, is readily available from records maintained by, or accessible to, Innovak or the records of the fifteen (15) school districts using Innovak's web-portal at the time of the breach.

## IV.   CLAIMS FOR WHICH CLASS CERTIFICATION IS SOUGHT

Named Plaintiffs seek certification of their claims for negligence and wantonness, breach of implied contract, fraudulent suppression, and unjust enrichment.

### A.   Negligence and Wantonness

To prove negligence under both Alabama and Mississippi common law, Named Plaintiffs must establish (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damages.[14] See *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992); *Lyle v. Mladinich*, 584 So.2d 397, 398–99 (Miss. 1991). To prove wantonness, the Named Plaintiffs must establish that Innovak acted with "reckless disregard" towards them. *See Graves v. Wildsmith*, 278 Ala. 228, 177 So.2d 448 (Ala. 1965); *Maye v. Pearl River County*, 758 So. 2d 391 (Miss. 1999).

Here, the elements of duty, breach, causation, and reckless disregard will be susceptible to common proof. Proof of damages may require some individualized

---

[14] Alabama is a "contributory negligence state," while Mississippi is a "comparative negligence state." However, this difference in applicable law does not affect this lawsuit, as Innovak has not alleged contributory negligence as a defense.

inquiry, but that does not prohibit class certification, as will be analyzed further below.

### B.      Breach of an Implied Contract

> An implied contract arises where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. Such a contract must contain all the elements of an express contract, which rests on consent, and it is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown.

*Gilbert v. Gwin-McCollum Funeral Home*, 268 Ala. 372, 380. *See also Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 66-67 (Miss. Ct. App. 2011) (finding an implied contract existed when there was a promise, a meeting of the minds between the parties, and that the terms of the implied contract were identifiable).

To prove a contract existed under both Alabama and Mississippi law, plaintiffs must establish (1) an agreement between competent parties (*i.e.*, offer and acceptance); (2) a lawful objective; (3) valuable consideration; and (4) a "meeting of the minds." *See McDonough Constr. Co. v. Tutt*, 209 F. Supp. 45, 48-49 (S.D. Ala. 1962); *Miss. Polymers, Inc. v. Velsicol Chem. Corp*., 2008 U.S. Dist. LEXIS 97909 at*5 (N.D. Miss. Dec. 2, 2008).

In this case, the Named Plaintiffs and proposed class members all had the same relationship to Innovak, used the same Innovak product or service, and will

rely on the same or similar evidence to prove that an implied contract existed vis-à-vis the entire class similarly, and that Innovak breached said contract.

### C.     Unjust Enrichment

Unjust enrichment "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another…" *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986). *See also Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997) ("One is unjustly enriched if his retention of a benefit would be unjust.")

Named Plaintiffs and proposed class members will each need to prove that Innovak was paid money to safeguard the PPI stored or made accessible on their web-portal, and that that Innovak should not in good conscience be able to retain that money. The evidence necessary to prove these elements will be the same or similar for all Named Plaintiffs and the proposed class members.

### D.     Fraudulent Suppression

"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Code of Ala. § 6-5-102. Alabama courts have further explained that the obligation to disclose material facts is compelling when the defendant has superior knowledge

or expertise not shared by the plaintiff. *Fratelli Cosulich Unipessoal, S.A. v. Specialty Fuels BTU, LLC*, 2015 U.S. Dist. LEXIS 86119, 47 (S.D. Ala. June 4, 2015); *Mann v. Adams Realty Co.*, 556 F.2d 288, 297 (5th Cir. Ala. 1977).

Again, Named Plaintiffs and the proposed class members all have the same relationship to Innovak. To prove their claims for fraudulent suppression, Named Plaintiffs and the proposed class members will all need to prove that Innovak had a duty to disclose that the PPI was vulnerable and, ultimately, compromised, so that Named Plaintiffs and the proposed class could take measures to prevent or mitigate damages. All proposed class members will rely on the same or similar evidence to prove these claims.

## V.   LEGAL STANDARDS GOVERNING CLASS CERTIFICATION

Under Fed. R. Civ. P. 23(c)(1), determination of class certification should be resolved "as soon as practicable after the commencement" of the action, and certification "may be conditional, and may be altered or amended" at any time before a decision is reached of the merits. The court has broad discretion in determining whether the prerequisites of Rule 23 are met. *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

The United States Supreme Court held that there is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be

maintained as a class action. Such a procedure would contravene Rule 23. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2nd 417 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988); *Fifth Moorings Condominiums, Inc. v. Shere*, 81 F.R.D 712, 717 (S.D.Fla. 1979); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 330 (S.D. Fla.1996) ("[A]t this stage of the proceedings [delving into factual matters] would be tantamount to an improper examination of the underlying merits.").

Class certification is appropriate if the Named Plaintiffs can show that they meet the requirements of Fed. R. Civ. P. 23(a) and also satisfy one of the provisions of Fed. R. Civ. P. 23(b). *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 520-521 (M.D. Ala. 1992). The Named Plaintiffs meet these requirements, as set forth below.

## VI.   ARGUMENT

### A.   The Proposed Class Meets the Requirements Established by Fed. R. Civ. P. 23(a).

Pursuant to Rule 23(a), plaintiffs may sue on behalf of a class only where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." All four of these requirements are met here, and Named Plaintiffs will address each requirement individually.

1. Numerosity

Rule 23(a) states that the Plaintiff must show that "the class is so numerous that joinder of all parties is impracticable." There must be so many members in the proposed class that "joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). There is no bright-line or hard-and-fast rule as to how many putative class members are enough. In some jurisdictions, numerosity is presumed satisfied if there are forty (40) or more members. See *Kilgo*, at 878 (finding that a class of thirty-one (31) from a wide geographic area met the numerosity requirement); *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) ("[G]enerally less than twenty-one is inadequate, more than forty adequate with numbers between varying according to other factors." (citation and internal quotation marks omitted)). *See also e.g., Korn v. Franchard Corp.*, 456 F. 2d 1206, 1209 (2d Cir. 1972); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 457-458 (E.D. Pa. 1968); *see also* H. Newberg & A Conte, *Newberg on Class Actions* § 3.05, p. 3-25 (3d ed. 1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impractical, and the Plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

In this case, there are hundreds—if not thousands—of proposed class members. Innovak admits that it contracts with fifteen (15) school districts that were

using the web-portal at the time of the data breach, and that thousands of employees could access their PPI through Innovak's web-portal. Innovak Watson Depo at p. 47, in Exhibit A.

Thus, there are at least hundreds of proposed class members whose PPI was compromised due to Innovak's actions, which is more than enough to make joinder impractical.

2. Commonality

Under the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011), Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally raises common questions.'" "[T]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant…" *Wal-Mart*, 131 S. Ct. at 2551. "Thus, the commonality test is no longer met when the proposed class merely establishes that there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Id.* (emphasis, citation, and internal quotation marks omitted). "Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution will resolve an issue that is central to the validity of each one of the class member's claims

in one stroke." *Id.* (alteration, emphasis, citation, and internal quotation marks omitted.)

In this case, the claims of all members of the proposed class depend almost entirely on the same questions of fact and law as those of the Named Plaintiffs, which, once resolved, will affect each and every claim of the proposed class members. Those questions include:

a) Whether Innovak engaged in the wrongful conduct alleged in the Amended Complaint;

b) Whether Innovak's conduct was fraudulent, deceptive, unfair, unconscionable, and/or unlawful;

c) Whether Innovak owed a duty to the Named Plaintiffs to use reasonable means to develop and provide software and databases that secured, protected, and encrypted their PPI;

d) Whether Innovak breached a duty owed to Named Plaintiffs;

e) Whether Innovak timely notified the Named Plaintiffs of the data breach;

f) Whether Innovak knew that Named Plaintiffs' PPI was at risk of a data breach;

g) Whether Innovak suppressed this risk from Named Plaintiffs;

h) Whether Innovak had entered into an implied contract with Named Plaintiffs;

i) Whether Innovak breached an implied contract with Named Plaintiffs;

j) Whether Innovak was unjustly enriched by its actions directed towards Named Plaintiffs; and

   k) Whether the Named Plaintiffs are entitled to the relief sought in the Complaint?

Based upon these common questions of both fact and law, the commonality requirement is amply satisfied under the standard as set forth in *Wal-Mart, supra.*.

   3. <u>Typicality</u>

   To meet Fed. R. Civ. P. 23(a)'s requirement of typicality, "[a] class representative must possess the same interest and suffer the same injury as the class members. . ." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001). Typicality may be present even when "substantial factual differences" exist, as long as there "is a strong similarity of legal theories.' " *Murray*, 244 F.3d at 811; *see also Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 543 (N.D. Ala 2001) ("particular factual differences, differences in the amount of damages claimed or even the availability of certain defenses against a class representative may not render his or her claims atypical.")

   In this case, each Plaintiff brings claims arising out of Innovak's failure to safeguard their PPI that was entrusted to Innovak. The claims brought by the Named Plaintiffs in this lawsuit are the same claims available to and being brought on behalf of each of the proposed class members who also had their PPI stolen due to Innovak's actions or inactions. Finally, the Named Plaintiffs suffered the same types of damages as the proposed class. These damages generally consist of: having their PPI fall into the hands of criminals, having fraudulent tax returns filed on their

behalf, having fraudulent credit or debit accounts opened on their behalf, having to enroll or purchase credit monitoring services, having to actively monitor credit reports, having to file police reports, loss of time and wages from having to address identity theft issues, and mental anguish.

Innovak's actions and failures that led to the Named Plaintiffs damages are the exact same actions and failures that lead to the damages of the proposed class. Through no fault of their own, the Named Plaintiffs and members of the proposed class had their PPI stolen due to Innovak's failure to safeguard that information. The Named Plaintiffs and each member of the proposed class assert the same legal theories and seek the same relief. The evidence necessary to prove Named Plaintiffs' claims and claims of the proposed class is identical. Defendant's liability for damages does not depend on individual circumstances. Hence, the typicality requirement is satisfied in this case.

### 4. Adequacy of Representation

The requirement that the Named Plaintiffs will fairly and adequately protect the interests of the proposed class is satisfied if the "named representatives have interests in common with the proposed class members and the representatives have interest in common with the proposed class members and the representatives and the qualified attorneys will properly prosecute the class action." *Gonzalez v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). The existence of the elements of adequate

representation are presumed, and the burden is on the Defendant to demonstrate that the representation will be inadequate. Under Rule 23(a)(4), the Court may conduct a two-part inquiry to determine adequacy: "(1) whether any substantial conflicts of interest exist between the named plaintiff and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003): *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-728 (11th Cir. 1987) ("[t]he adequacy inquiry. . . serves to uncover conflicts of interest between named parties and the class they seek to represent.").

Named Plaintiffs interests are such that they will assert and defend the interests of all of the class members with "forthrightness and vigor." *See Lyons v. Georia-Pacific Corp. Salaried Employees Ret. Pla*n, 221 F.3d 1235, 1253 (11th Cir. 2000). Named Plaintiffs have remained apprised of all aspects of the litigation and continue to assist counsel in prosecuting this action.

In this case, each of the Named Plaintiffs have submitted unsworn declarations that they are free from any known conflicts of interest and are committed to prosecuting the class action. *See* declarations of Named Plaintiffs.[15] Further, the proposed class definition excludes those with a financial stake in Innovak or its affiliate companies, further reducing the likelihood of a conflict of

---

[15] Filed contemporaneously with this memorandum brief as part of the Evidentiary Submission in Support of the Plaintiffs Motion for Class Certification, and attached hereto as Exhibits C-K.

interest. Though no discovery or deposition notices have been issued to Named Plaintiffs yet, the Named Plaintiffs are prepared to be deposed, have already provided the documents and statements that supply the foundational facts for the pleadings and this motion, and remain diligent in prosecuting this action in an effort to realize any sort of justice for victims of the Innovak Data Breach. The Named Plaintiffs' declarations also state that they are each willing to cooperate and assist with whatever the needs of the case may be. Thus, the requirement of adequacy of representation is satisfied.[16]

Furthermore, as provided below, the law firms representing Named Plaintiffs have significant experience prosecuting class action lawsuits and other complex litigation matters, and are dedicated to promoting the interests of the proposed class in this case. *See* Biography and Declaration of Plaintiffs' Counsel in Exhibit R.[17] Plaintiffs' Counsel are unaware of any conflicts of interest that would render them inadequate to represent the proposed class in this case and respectfully submit that they will fairly and adequately protect the interests of the proposed class.

### B.   The Proposed Class Meets the Requirements Established by Fed. R. Civ. P. 23(b)(3).

Rule 23(b) requires that the class fit within one of three enumerated categories. The proposed class fits squarely within Fed. R. Civ. P. 23(b)(3). "Framed

---

[16] Named Plaintiffs will address Rule 23(g)'s adequacy of counsel requirements below.

[17] Filed contemporaneously with this memorandum brief as part of the Evidentiary Submissions in Support of Plaintiffs Motion for Class Certification.

for situations in which 'class action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'" *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 615 (1997). A movant under 23(b)(3) must make two showings in addition to the 23(a) prerequisites: (1) "that the questions of law or fact common to the class members predominate over any questions affecting only individual members," a condition referred to as predominance; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," also referred to as superiority. *See* Fed. R. Civ. P. 23(b)(3). As demonstrated below, this case satisfies both the predominance and superiority requirements.

### 1. Predominance

The predominance analysis "take[s] into account 'the claims, defenses, relevant facts, and applicable substantive law' to assess the degree to which resolution of the class-wide issues will further each individual class member's claim against the defendant." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). The purpose of the predominance requirement is to determine "whether the individual questions in a case are so overwhelming as to destroy the utility of the class action." *Partain v. First National Bank of Montgomery*, 59 F.R.D. 56, 59 (M.D. Ala. 1973).

In this case, the resolution of the class-wide issues as discussed previously in regards to commonality will further each class members' claims for negligence and wantonness, breach of implied contract, unjust enrichment, and fraudulent suppression. Indeed, all of the proposed class members' claims depend on proving the same conduct by Innovak and will use the same evidence to do so.

While there are individualized aspects of causation and damages for the Named Plaintiffs and the proposed class, this does not preclude class certification. *See Smith v. Triad of Ala., LLC*, 2017 U.S. Dist. LEXIS 38574, 39 (M.D. Ala. Mar. 17, 2017) ("[I]t is hornbook law that individualized damages do not preclude class certification.) *See also In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d. Cir. 1986)("[I]t [is not] a disqualification that damages must be assessed on an individual basis."). Causation is at best a background issue in this case. Causation and damages, while also necessary for a finding of liability, orbit around the two central questions of duty breach. "Resolving the common questions of contractual or tort-based duty and breach 'will be of great value in the ultimate resolution of each class member's underlying cause of action.' Although individualized questions of causation and damages may persist, they do not derail the predominance of the common questions." *Smith*, supra., at 43 (quoting *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 695 (N.D. Ga., 2003.)

One factor the Court may also consider in regards to the "manageability" of a potential class action is variations among state laws. As discussed previously, Innovak, through its corporate representatives, testified that it only provided the web-portal service to fifteen (15) school districts at the time of the data breach, and all of those school districts were located in either Alabama or Mississippi. *See* Innovak Watson Depo at pp. 47 and 127, in Exhibit A.  This means the proposed class consists of persons from only those two states, and only the laws of those two states may be implicated in this class action. Named Plaintiffs do not believe there are substantive differences in the state law claims that would make the proposed class action unmanageable. If the Court disagrees, this issue is easily cured by certifying the proposed state subclasses in order to apply each state's respective laws.

### 2.  Superiority

A Rule 23(b)(3) class should be certified if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The superiority analysis should take into account "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely

difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). The Named Plaintiffs meet this requirement.

All four factors contemplated by Rule 23(b)(3) favor class certification. Common issues predominate in the class members' claims and, because of the similarity of the proposed class members damages, one class member's recovery will not preclude the recovery of another. *See Klay v. Humana, Inc.*, *supra.,* 382 F.3d at 1269 (explaining that a higher degree of predominance makes class resolution all the more superior). Accordingly, the class members have only a minor interest, if any, in controlling the prosecution of the action. *See* Fed. R. Civ. P. 23(b)(3)(A). There is no other litigation concerning the Innovak Data Breach, and concentrating this dispute in a single forum will help bring the matter to a uniform conclusion that neither prejudices nor privileges Innovak or particular class members. *Id.* Additionally, as explained above, each class member lives in Alabama or Mississippi, so the difficulties in managing the class should be minimal. *Id*. 23(b)(3)(D)

## C.     The Proposed Class is Clearly Ascertainable

In addition to the explicit requirements of Fed. R. Civ. P. 23(a) and (b), Rule 23 has been construed to include an implicit requirement that the purported class be ascertainable by reference to objective criteria. *Bussey v. Macon Cty. Greyhound*

*Park*, 562 F. App'x 782, 787 (11th Cir. 2014);. *Karhu v. Vital Pharms, Inc*., 621 Fed. Appx. 945, 947-949 (11th Cir. 2015).

The objective criteria should allow class members to be identified in a manner that is administratively feasible, which means that the process of identifying class members requires little, if any, individual inquiry. *Id*.

As the Court will recall, Innovak previously used their 12(b)(6) motion to challenge whether Named Plaintiffs' Proposed Class was ascertainable under the above standard. This Court rightly denied Innovak's motion to dismiss and held, "The discovery process will ultimately reveal whether Innovak's records provide a feasible means of identifying all end users whose PPI was compromised." *See* Memorandum Opinion and Order (Doc. 16 at 10).

During the deposition of Innovak's corporate representatives, David Watson testified that the employee web-portal at issue in this case was only utilized by fifteen (15) school district clients. Watson further testified that, immediately after the breach was reported to him, he was able to access end user data and to generate a "query" to see that "abnormalities" had taken place in the portal. *See* Innovak Watson Depo. at pp. 55-61, in Exhibit A. He determined that there had been "abnormalities" relating to eleven (11) of the school districts. *Id*. Either Innovak or these affected school districts will have records of all end user employees whose PPI was accessible on the web-portal at or around the time of the data breach just over a

year ago. Although Innovak still contends that it does not store or maintain any end user records, it is clear from its testimony that Innovak can at least access end user records and has the ability to control access to the web-portal. *See* Innovak Watson Depo. at p. 60, in Exhibit A. Further discovery from non-parties, such as the affected school districts, will also likely help identify the class members whose PPI was compromised in the Innovak Data Breach.

> ### D.   Counsel for Named Plaintiffs in this Action are Qualified to be Appointed as Class Counsel under Fed. R. Civ. P 23(g).

The law firms appearing for Named Plaintiffs in this action, ZARZAUR MUJUMDAR & DEBROSSE – Trial Lawyers and PITTMAN, DUTTON & HELLUMS, P.C. (collectively referred to as "Plaintiffs' Counsel"), meet the requirements of Fed. R. Civ. P. 23(g) and request to be appointed as class counsel. Rule 23(g) lists a number of factors that courts must consider when appointing class counsel, as well as a number of factors that courts may consider.

The court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action" and (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." *See* Fed. R. Civ. P. 23 (g)(1) and (2). As well as, "counsel's knowledge of the applicable law" and "the resources that counsel will commit to representing the class." *Id.*

Plaintiffs' Counsel are the only law firms that have worked on identifying or investigating potential claims against Innovak in this action. Each firm has already logged numerous hours of work and incurred expenses to pursue this action for Named Plaintiffs. Plaintiffs' Counsel have developed intimate knowledge of the facts and details of this case.

Both firms representing Named Plaintiffs have numerous years of experience prosecuting class action lawsuits and complex litigation, and are dedicated to promoting the interests of the proposed class in this case. *See* Declaration and Biography of Plaintiffs' Counsel in Exhibit R.  Plaintiffs' Counsel are unaware of any conflicts of interest that would render them inadequate to represent the proposed class in this case and respectfully submit that they will fairly and adequately protect the interests of the proposed class.

The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Counsel for Named Plaintiffs do not believe that there are any pertinent matters affecting their ability to provide effective representation to the proposed class, but Counsel will gladly respond to any other considerations the Court may have.

## **CONCLUSION**

The Named Plaintiffs have demonstrated that an ascertainable class and a well-defined community of interest exists among the proposed class members. No

individual issues of facts or law need to be proven in order to determine the rights

and remedies of the proposed class. Accordingly, the Named Plaintiffs respectfully

ask the Court to certify the class as defined in this motion.

For the reasons set forth above, Named Plaintiffs respectfully request that

this Honorable Court:

1. Hold an evidentiary hearing on class certification if necessary
   pursuant to the Manual for Complex Litigation 3d (1995);

2. Ultimately certify the Class; and

3. Grant all further relief as justice may require.

Respectfully submitted this the 12th day of April, 2017.

/s/ Diandra S. Debrosse Zimmermann
Diandra S. Debrosse Zimmermann
ASB-2956-N76D
Anil A. Mujumdar
ASB-2004-L65M

**OF COUNSEL:**
**ZARZAUR MUJUMDAR & DEBROSSE – Trial Lawyers**
2332 2nd Avenue North
Birmingham, Alabama 35203
T: 205.983.7985
F: 888.505.0523
E: fuli@zarzaur.com
    anil@zarzaur.com

/s/ Jon Mann
Jonathan S. Mann
ASB-1083-A36M
Chris T. Hellums
ASB-5583-L73C

**OF COUNSEL**:
**PITTMAN DUTTON & HELLUMS, PC**
2001 Park Place, Suite 1100
Birmingham, Alabama 35203
T: 205.322.8880
F: 205.328.2711
E: pdh-efiling@pittmandutton.com
   jonm@pittmandutton.com
   chrish@pittmandutton.com

## CERTIFICATE OF SERVICE

     I hereby certify that on April 12, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Tee Persad
Herbert T. Schwartz
Samuel Walker
**CPLS, P.A.**
201 East Pine Street
Suite 445
Orlando, Florida 32801
T: 407.647.7887
F: 407.647.5396
E: attorneypersad@cplspa.com
   hschwartz@cplspa.com
   swalker@cplspa.com

                    */s/Diandra S. Debrosse Zimmermann*
                    OF COUNSEL